**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION**

| | |
|---|---|
| TOPWIRE LLC,<br><br>                    Plaintiff,<br><br>         v.<br><br>APPLE INC.,<br><br>                    Defendant. | Civil Action No. 7:25-cv-00551-ADA<br><br>**JURY TRIAL DEMANDED**<br><br><br><br>**PUBLIC VERSION** |

**DEFENDANT APPLE INC.'S OPPOSED MOTION TO TRANSFER VENUE TO THE
NORTHERN DISTRICT OF CALIFORNIA UNDER 28 U.S.C. § 1404(A)**

**TABLE OF CONTENTS**

**Pages**

I.  INTRODUCTION ...................................................................................................1

II.  FACTUAL BACKGROUND...................................................................................1

    A.  TopWire's Infringement Allegations Are Directed To Main Logic Board Components In Thirty-Four Accused iPhone Models. ...........................................1

    B.  Apple's Relevant Employees And Evidence Are Located Almost Exclusively In The Northern District Of California. ..............................................2

    C.  TopWire's Purported Presence In This District Is Recent, Ephemeral, And Bears No Connection To The Issues In This Case. .................................................3

III.  LEGAL STANDARDS ...........................................................................................5

IV.  ARGUMENT ...........................................................................................................5

    A.  This Case Could Have Been Brought In NDCA. .....................................................5

    B.  The Private Interest Factors Strongly Favor Transfer...............................................6

        1.  The Witness Convenience Factor Strongly Favors Transfer To NDCA—Where Nearly Every Potential Witness Is Based. .......................6

        2.  The Sources Of Proof Factor Strongly Favors NDCA, Where The Vast Majority Of Relevant Evidence Is Located. ........................................8

        3.  The Compulsory Process Factor Favors Transfer To NDCA....................11

        4.  The Practical Problems Factor Is Neutral. .................................................12

    C.  The Public Interest Factors Favor Transfer Or Are Neutral. ................................12

        1.  The Local Interest Factor Strongly Favors Transfer To NDCA. ...............12

        2.  The Remaining Public Interest Factors Are Neutral.................................13

V.  CONCLUSION......................................................................................................14

# TABLE OF AUTHORITIES

**Pages**

**Cases**

*AlmondNet, Inc. v. Roku, Inc.*,
2022 WL 22891201 (W.D. Tex. Nov. 28, 2022)................................................................. 12

*CPC Pat. Techs. PTY Ltd. v. Apple Inc.*,
143 S. Ct. 206 L. Ed. 2d 80 (2022)................................................................................. 11

*Dodots Licensing Sols. LLC v. Apple Inc.*,
2023 WL 4980561 (W.D. Tex. Aug. 3, 2023).................................................................. 12

*Gesture Tech. Partners, LLC v. Apple Inc.*,
2022 WL 3592451 (W.D. Tex. Aug. 22, 2022)................................................... 5, 6, 10, 13

*Haptic, Inc. v. Apple, Inc.*,
2024 WL 2954194 (W.D. Tex. Apr. 15, 2024).................................................................. 7

*In re Apple Inc.*,
2021 WL 5291804 (Fed. Cir. Nov. 15, 2021).................................................................. 13

*In re Apple Inc.*,
2022 WL 1196768 (Fed. Cir. Apr. 22, 2022) .................................................................. 11

*In re Apple Inc.*,
979 F.3d 1332 (Fed. Cir. 2020)........................................................................ 5, 9, 12, 13

*In re BigCommerce, Inc.*,
890 F.3d 978 (Fed. Cir. 2018)....................................................................................... 5

*In re Clarke*,
94 F.4th 502 (5th Cir. 2024) ......................................................................................... 8

*In re Genentech, Inc.*,
566 F.3d at 1345 (Fed. Cir. 2009).................................................................................. 9

*In re Google LLC*,
2021 WL 5292267 (Fed. Cir. Nov. 15, 2021).................................................................. 9

*In re Haptic, Inc.*,
2024 WL 3159288 (Fed. Cir. June 25, 2024) .................................................................. 10

*In re Hoffmann-La Roche Inc.*,
587 F.3d 1333 (Fed. Cir. 2009)....................................................................................... 12

**TABLE OF AUTHORITIES (cont'd)**

**Pages**

*In re Juniper Networks, Inc.*,
　　14 F.4th 1313 (Fed. Cir. 2021) ............................................................ 5, 13, 14

*In re Nintendo Co.*,
　　589 F.3d 1194 (Fed. Cir. 2009)................................................................... 5, 11

*In re Quest Diagnostics Inc.*,
　　2021 WL 5230757 (Fed. Cir. Nov. 10, 2021)..................................................... 6

*In re TikTok, Inc.*,
　　85 F.4th 352 (5th Cir. 2023) .......................................................................... 10

*In re Volkswagen AG*,
　　371 F.3d 201 (5th Cir. 2004) ......................................................................... 5, 8

*In re Volkswagen of Am., Inc.*,
　　545 F.3d 304 (5th Cir. 2008) ................................................................... 5, 7, 12

*LED Wafer Solutions LLC v. Samsung Electronics Co. Ltd. et al.*,
　　6:21-cv-00292-ADA, Dkt. No. 95 (Aug. 25, 2022)........................................... 11

*LoganTree LP v. Apple Inc.*,
　　2022 WL 1491097 (W.D. Tex. May 22, 2022) ......................................... 6, 9, 14

*MasterObjects, Inc. v. Facebook, Inc.*,
　　2021 WL 7449852 (W.D. Tex. July 13, 2021) ................................................... 6

*Moskowitz Family LLC v. Globus Medical, Inc.*,
　　2020 WL 4577710 (W.D. Tex. July 2, 2020). ................................................. 12

*Parus Holdings Inc. v. LG Elecs. Inc.*,
　　2020 WL 4905809 (W.D. Tex. Aug. 20, 2020)................................................. 12

*S.M.R Innovations LTD., v. Apple Inc.*
　　756 F. Supp. 3d 453 (W.D. Tex. Nov. 14, 2024)............................................. 14

*Smart Mobile Techs. LLC v. Apple Inc.*,
　　2023 WL 5540152 (W.D. Tex. Aug. 28, 2023).................................................. 7

*TC Heartland LLC v. Kraft Foods Group Brands LLC*,
　　581 U.S. 258 (2017)........................................................................................ 5

*Topia Tech., Inc. v. Dropbox, Inc.*,
　　2023 WL 1978909 (W.D. Tex. Feb. 13, 2023)................................................ 11

*USTA Technology, LLC v. Google LLC*,
　　2023 WL 4833481 (W.D. Tex. July 26, 2023) ................................................ 11

iii

**TABLE OF AUTHORITIES (cont'd)**

**Pages**

*XR Commc'ns, LLC v. HP Inc.*,
    2022 WL 3448746 (W.D. Tex. Aug. 17, 2022) ................................................................... 10

*XY, LLC v. Trans Ova Genetics, LC*,
    2017 WL 5505340 (W.D. Tex. Apr. 5, 2017) ..................................................................... 9

**Statutes**

28 U.S.C. § 1404 ............................................................................................................... 1, 5, 8, 14

35 U.S.C. § 1400 ........................................................................................................................... 5

**TABLE OF EXHIBITS**

| Exhibit | Description |
|---|---|
| A | TopWire's Preliminary Infringement Contentions Cover Pleading, dated February 24, 2026 |
| B | Excerpts of Apple's 2025 Form 10-K |
| C | "Contact Texan Registered Agent LLC" webpage |
| D | "Texas Virtual Office" webpage |
| E | "Texas Business Address" webpage |
| F | Certificate of Formation for TopWire LLC |
| G | Dallas Central Appraisal District webpage for 2908 Rosedale Ave. |
| H | Statement of Change of Registered Office/Agent for TopWire LLC |
| I | Assignments for the application that issued as U.S. Patent No. 9,859,202 |
| J | LinkedIn profile of Dyi-Chung Hu |
| K | Excerpts of Petition for Inter Partes Review of U.S. Patent No. 9,859,202 in IPR2026-00303 |
| L | Google Flights webpage showing flights from San Francisco, California (SFO), to Austin, Texas (AUS) |
| M | Google Flights webpage showing flights from San Francisco, California (SFO), to Dallas, Texas (DFW) |
| N | Google Flights webpage showing flights from Austin, Texas (AUS), to Midland, Texas (MAF) |
| O | Google Flights webpage showing flights from Dallas, Texas (DFW), to Midland, Texas (MAF) |
| P | Air Miles Calculator webpage showing air distance from San Francisco, California (SFO), to Austin, Texas (AUS) |
| Q | Air Miles Calculator webpage showing air distance from San Francisco, California (SFO), to Dallas, Texas (DFW) |
| R | Google Maps webpage showing driving distance from Austin-Bergstrom International Airport (AUS) to the United States District Court for the Western District of Texas, Midland/Odessa Division |
| S | Google Maps webpage showing driving distance from Dallas/Fort Worth International Airport (DFW) to the United States District Court for the Western |

**TABLE OF AUTHORITIES (cont'd)**

**Pages**

|  |  |
|---|---|
|  | District of Texas, Midland/Odessa Division |
| T | Google Maps webpage showing driving distance from Apple Park to the United States District Court for the Northern District of California, San Francisco Division |
| U | Google Maps webpage showing driving distance from Apple Park to the United States District Court for the Northern District of California, Oakland Division |
| V | Google Maps webpage showing driving distance from Apple Park to the United States District Court for the Northern District of California, San Jose Division |
| W | Google Flights webpage showing flights from Taipei City, Taiwan (TPE), to Midland, Texas (MAF) |
| X | Google Flights webpage showing flights from Taipei City, Taiwan (TPE), to Dallas, Texas (DFW) |
| Y | Google Flights webpage showing flights from Taipei City, Taiwan (TPE), to San Francisco, California (SFO) |
| Z | Excerpts of United States Patent Application Publication No. 2013/0182402 ("Chen") |

Unless otherwise indicated: (1) exhibit citations designated "Ex." refer to exhibits to the Declaration of Joze Welsh in Support of Defendant Apple Inc.'s Opposed Motion To Transfer Venue To The Northern District Of California Under 28 U.S.C. § 1404(a), submitted concurrently herewith; and (2) highlighting in exhibits is added for clarity.

All emphases are added unless indicated otherwise.

## I.  INTRODUCTION

Defendant Apple Inc. ("Apple") respectfully requests transfer to the Northern District of California ("NDCA").  Plaintiff TopWire LLC ("TopWire") accuses Apple of infringing U.S. Patent No. 9,859,202 (the "'202 Patent") on the basis that thirty-four iPhone models include "a double-layered logic board with two substrates."  Dkt. No. 22 ¶¶ 24–27.  Apple refers to that structure as the main logic board or MLB.  The ▮▮▮▮▮ Apple engineers who designed those MLBs—along with their documents, physical records, and prototypes—are located almost exclusively in the NDCA, at or near Apple's global headquarters in Cupertino.  The only ▮ employees outside of NDCA who worked on any accused MLB designs are based in Shanghai, China—not the Western District of Texas ("WDTX").  Furthermore, other witnesses with potentially relevant knowledge—such as the employees with knowledge concerning Apple's iPhone marketing and licensing practices—are likewise based almost entirely in NDCA, and none are in WDTX.

TopWire likewise lacks any meaningful connection to this District.  TopWire does not allege that it has any employees or operations in this District (or anywhere else), and its sole purported connection to WDTX is the address of a registered agent in Austin with whom TopWire appears to have affiliated shortly before filing this case.

A straightforward application of the *Volkswagen* factors shows that NDCA is the clearly more convenient venue under 28 U.S.C. § 1404(a).

## II.  FACTUAL BACKGROUND

### A.  TopWire's Infringement Allegations Are Directed To Main Logic Board Components In Thirty-Four Accused iPhone Models.

TopWire filed its original complaint on December 1, 2025.  Dkt. No. 1.  In lieu of responding to Apple's partial motion to dismiss, TopWire filed an amended complaint on February

23, 2026.  Dkt. No. 22 (the "Complaint").  TopWire served its infringement contentions on February 24, 2026.  Ex. A.  In those contentions, TopWire alleges that thirty-four different iPhone models (collectively, the "Accused Products") that purportedly include "a double-layered logic board with two substrates" infringe the asserted claims of the '202 Patent.  *See, e.g.*, Dkt. No. 22 ¶¶ 25–26, 27 (listing iPhone models); Ex. A at 1–2.  Those allegations focus on the structure of a component called the main logic board, or MLB, in each Accused Product (collectively, the "Accused Structures").  *See, e.g.*, Dkt. No. 22 ¶¶ 25–27; Ex. A at 2.

### B.     Apple's Relevant Employees And Evidence Are Located Almost Exclusively In The Northern District Of California.

Apple has been headquartered in Cupertino, California (in NDCA) for nearly fifty years.  Ex. B at 1, 20.  The overwhelming majority of Apple employees who have information relevant to TopWire's allegations are based in NDCA.

Nearly all relevant technical information is in NDCA.  In particular, a team of ▮▮▮▮ Cupertino-based Apple employees collectively worked on the design for the MLBs across all thirty-four Accused Products.  Gammel Decl. ¶ 6.  Only ▮ employees outside NDCA worked on the MLB design for any Accused Product.  *Id*.  Those employees are based in Shanghai, China— not in this District—and they worked in conjunction with the Cupertino-based team.  *Id*.

Any relevant marketing information is in NDCA.  In particular, the team responsible for marketing the Accused Products in the United States is based entirely in NDCA.  DeIuliis Decl. ¶ 4.

Nearly all information relevant to licensing is likewise in NDCA.  In particular, Apple employs ▮▮▮ people who are responsible for third-party patent transactions and licensing matters, including license agreements concerning the Accused Products.  Anderson Decl. ¶¶ 4–5. ▮▮▮ of those employees are based in NDCA.  The remaining ▮▮ employees are located in

2

Washington, DC; Pittsburgh, Pennsylvania; or Singapore—all outside of this District.  *Id.* ¶ 5.

Finally, those employees' related electronic records are largely generated from, stored in, and/or accessed from NDCA.  Gammel Decl. ¶¶ 6–7; DeIuliis Decl. ¶¶ 4–5; Anderson Decl. ¶¶ 5–6.  And certain records related to the accused technology—such as Apple's prototypes, documents stored locally on employees' computers, and hardcopy documents such as notebooks—are physically located in NDCA.  Gammel Decl. ¶¶ 6–7; DeIuliis Decl. ¶¶ 4–5; Anderson Decl. ¶¶ 5–6.  Moreover, confidential patent licensing and transaction documents are accessible only to those with proper credentials and access rights on a need-to-know basis.  Anderson Decl. ¶ 6.  No one in this District is known to have access to those materials.  *Id*.  In short, Apple's relevant records are overwhelmingly generated, maintained, and accessed in NDCA, where Apple is headquartered and where the relevant teams are based.

### C.    TopWire's Purported Presence In This District Is Recent, Ephemeral, And Bears No Connection To The Issues In This Case.

In stark contrast to the strong ties that Apple, its employees, and the Accused Structures have to NDCA, TopWire does not appear to have any meaningful connection to this District.  Indeed, TopWire does not claim to have any physical presence here at all—only "a mailing address and a registered office address at 5900 Balcones Drive Suite 100 Austin, Texas 78731."  Dkt. No. 22 ¶ 1.  That address is for a "Texan Registered Agent" that appears to offer "use of [their] business address" and "Texas business address[es] with unique suite #," such as TopWire's, for a fee.  *See, e.g.*, Exs. C at 1; D at 1; E at 1.  Accordingly, because a mere business address supplied for a fee does not indicate the presence of any relevant evidence, it does not appear that TopWire has any relevant evidence in this District.

Moreover, when TopWire registered itself as an LLC, it did not use that Austin address.  Rather, TopWire listed its registered office address (and the address of its purported manager, Mr.

3

Robert Katz) as "2908 Rosedale Ave Dallas, 75205," which appears to be a residential property owned by Mr. Katz—also outside this District. Exs. F at 1; G at 1. TopWire only changed its registered address to that of its Austin registered agent on November 12, 2025—less than three weeks before filing this lawsuit. Ex. H at 1.

TopWire's history also suggests a lack of any meaningful connection to this District. TopWire only registered itself as an LLC in Texas on February 25, 2025—immediately before it began taking steps to bring this lawsuit. Ex. F at 1. On March 14, 2025, TopWire allegedly purchased the '202 Patent from the named inventor, Dr. Dyi-Chung Hu. Ex. I. On April 27, 2025, TopWire recorded that purchase with the Patent Office. *Id.* In July 2025, Mr. Katz—a serial single-member patent plaintiff—sent a letter to Apple from his Dallas-based law office, stating that he represents TopWire and alleging (without any meaningful analysis) that Apple infringes the '202 Patent. Dkt. No. 22-2. When Apple responded to that letter asking for information that supposedly supports TopWire's bare allegations, TopWire never responded. Anderson Decl. ¶ 10. Instead, on December 1, 2025—less than ten months since it came into existence as a Texas LLC, less than nine months after acquiring the '202 Patent, and less than three weeks after changing its registered address to Austin—TopWire brought this lawsuit. *See* Dkt. No. 1; Anderson Decl. ¶ 10.

Any relevant witnesses or evidence TopWire may have are outside this District. For example, when TopWire recorded its purchase of the '202 Patent, it listed Mr. Robert Katz and his Dallas business address—in the Northern District of Texas—as the relevant correspondent. Ex. I. Moreover, TopWire did not use its purported Austin address in that process. *Id.* As it did when it registered as an LLC, TopWire listed what appears to be Mr. Katz's Dallas residential address— also outside this District. *See* Ex. I; Ex. G at 1. Beyond Mr. Katz, the only person identified in

4

TopWire's Complaint is the '202 Patent's sole named inventor, Dr. Hu.  *See* Dkt. No. 22 ¶¶ 16–17.  Dr. Hu is alleged to have been "a resident of Taiwan at the time of filing for patent protection" (*id.* ¶ 16)—*i.e.*, outside of this District—and that appears to hold true today.  Ex. J at 1.

## III.    LEGAL STANDARDS

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought[.]"  28 U.S.C. § 1404(a).  Transfer is appropriate where the moving party shows that the suit could have been brought in the transferee venue, and that the transferee venue is "clearly more convenient" than the venue in which the suit was filed.  *In re Apple Inc.*, 979 F.3d 1332, 1338 (Fed. Cir. 2020) ("*Apple I*") (internal citation and quotations omitted); *see also Gesture Tech. Partners, LLC v. Apple Inc.*, 2022 WL 3592451, at *2 (W.D. Tex. Aug. 22, 2022).  The relevant comparison is "between the two forums"—here, WDTX and NDCA.  *In re Juniper Networks, Inc.*, 14 F.4th 1313, 1318, 1322 (Fed. Cir. 2021).  Courts in the Fifth Circuit consider eight private- and public-interest factors—the *Volkswagen* factors—to make that determination.  *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"); *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) ("*Volkswagen II*").  The plaintiff's choice of forum is not a separate factor—it is subsumed within the movant's burden of proof.  *See In re Nintendo Co.*, 589 F.3d 1194, 1200 (Fed. Cir. 2009).

## IV.    ARGUMENT

### A.    This Case Could Have Been Brought In NDCA.

A patent infringement case "may be brought in the judicial district where the defendant resides[.]" 35 U.S.C. § 1400(b).  A corporate defendant "resides" in its state of incorporation (*TC Heartland LLC v. Kraft Foods Group Brands LLC*, 581 U.S. 258, 262 (2017)) and where its headquarters is located (*In re BigCommerce, Inc.*, 890 F.3d 978, 985 (Fed. Cir. 2018)).  Apple is

5

incorporated in California and headquartered in Cupertino, California. Ex. B at 1, 20. Accordingly, this case could have been brought in NDCA.

**B.      The Private Interest Factors Strongly Favor Transfer.**

**1.      The Witness Convenience Factor Strongly Favors Transfer To NDCA—Where Nearly Every Potential Witness Is Based.**

The witness convenience factor is "[t]he most important factor in the transfer analysis." *Gesture Tech.*, 2022 WL 3592451, at \*3; *see In re Quest Diagnostics Inc.*, No. 2021-193, 2021 WL 5230757, at \*2 (Fed. Cir. Nov. 10, 2021) (same). "If a substantial number of witnesses reside in one venue and no witnesses reside in another, the factor will weigh in favor of the venue where witnesses reside." *MasterObjects, Inc. v. Facebook, Inc.*, 2021 WL 7449852, at \*4 (W.D. Tex. July 13, 2021); *LoganTree LP v. Apple Inc.*, 2022 WL 1491097, at \*7 (W.D. Tex. May 22, 2022) ("The Court finds that this factor heavily favors transfer because while Apple identified several Apple employees with relevant and material knowledge working in the NDCA," plaintiff "only identified" one potential witness "as residing in Texas and has failed to establish with any specificity the degree of relevant and material knowledge he may possess."). Almost every potential witness in this case is based in NDCA and none are based in WDTX. Accordingly, the witness convenience factor strongly favors transfer.

*First*, almost every potential Apple witness is based in NDCA, and none are based in WDTX. Almost every single technical witness is based in NDCA. TopWire accuses Apple of infringing the '202 Patent based on the MLBs within thirty-four different accused iPhone models. *See, e.g.*, Dkt. No. 22 ¶¶ 25–26, 27 (listing iPhone models); Ex. A at 1–2. Collectively, ███ Apple employees on Apple's PCB (printed circuit board) design team have worked on those MLB designs. Gammel Decl. ¶ 6. ███████ of those employees are based in Cupertino and, collectively, worked on the MLB design for all thirty-four Accused Products. *Id*. The remaining

6

███ employees are based in Shanghai, China and worked in conjunction with the Cupertino-based team. *Id*. As such, any witness that Apple would foreseeably bring to trial to testify about the Accused Structures is based in NDCA. None are based in WDTX. *Id*.

Likewise, nearly all potential marketing and licensing witnesses are in NDCA. All of the Apple employees responsible for iPhone marketing in the United States work in Apple's Cupertino office or elsewhere in the San Francisco Bay Area. DeIuliis Decl. ¶ 4. Apple has two teams that handle third-party patent transactions and licensing matters—the IP Transactions team and the Special Deals & Analytics ("SDA") team. Anderson Decl. ¶ 4. The IP Transactions team includes ███ employees, all of whom work in Apple's Cupertino office. *Id.* ¶ 5. The SDA team includes ███ employees, ███ of whom work in Apple's Cupertino office. *Id*. The remaining ███ employees on the SDA team are based in Washington, DC; Pittsburgh, Pennsylvania; or Singapore—all outside of this District.[1] *Id*.

Apple's principal office in Cupertino—at or around which nearly all of Apple's employees with any potentially relevant knowledge work—is a short distance from the three NDCA courthouses.[2] As such, a trial in NDCA would not require Apple's witnesses to be "away from their homes and families for an extended period of time." *Smart Mobile Techs. LLC v. Apple Inc.*, 2023 WL 5540152, at *3 (W.D. Tex. Aug. 28, 2023); *see Volkswagen II*, 545 F.3d at 317 ("[I]t is more convenient for witnesses to testify at home[.]"). In contrast, trial in WDTX would involve a significantly greater travel burden. *See* Exs. L–Q; Exs. R–S; *In re Clarke*, 94 F.4th 502, 514 (5th

---

[1] Apple's witnesses and documents concerning financial information regarding iPhones are likewise located in NDCA. *See, e.g.*, *Haptic, Inc. v. Apple, Inc.*, No. 1:23-cv-1351-DII, 2024 WL 2954194, at *3, *5 (W.D. Tex. Apr. 15, 2024).

[2] Apple's headquarters is approx. 10 miles (15-minute drive) from the San Jose courthouse and approximately 50 miles (1-hour drive) from the San Francisco and Oakland courthouses. *See* Exs. T-V.

Cir. 2024) (Travel "over one thousand additional miles to testify" imposes a "massive inconvenience."). Accordingly, NDCA is clearly more convenient for Apple's potential witnesses.

***Second***, TopWire does not identify anyone in its Complaint who might be a willing witness in this District. *See generally* Dkt. 22. For example, TopWire does not allege that it employs anyone or manufactures anything in this District (or anywhere else). *See generally id*. The only individual referenced in TopWire's Complaint is Dr. Dyi-Chung Hu, the '202 Patent's named inventor. *See id.* ¶¶ 16–17. Dr. Hu is alleged to have been "a resident of Taiwan at the time of filing for patent protection." *Id.* ¶ 16. The same appears to hold true today. Ex. J at 1. TopWire has not indicated whether Dr. Hu would be willing to travel to either NDCA or WDTX.[3]

TopWire also included, as an exhibit to the Complaint, a letter from Mr. Robert Katz to Apple, in which he identified himself as counsel for TopWire. Dkt. 22-2. Mr. Katz's letter states that his business address is in Dallas, Texas, and he likewise appears to reside in Dallas—outside WDTX. Dkt. No. 22-2; *see, e.g.*, Exs. F at 1; G at 1. But that does not shift the balance because the "location of counsel"—as Mr. Katz identified himself to Apple (Dkt. No. 22-2)—is irrelevant to the transfer analysis. *See Volkswagen I*, 371 F.3d at 206 ("[T]he convenience of counsel is not a factor to be assessed in determining whether to transfer a case under § 1404(a).").[4]

Because NDCA is more convenient for nearly every single one of the identified willing witnesses, this factor strongly favors transfer to NDCA.

### 2. The Sources Of Proof Factor Strongly Favors NDCA, Where The Vast Majority Of Relevant Evidence Is Located.

The sources of proof factor also strongly favors transfer. "In patent infringement cases,

---

[3] In any case, travel from Taiwan to San Francisco is much easier than travel from Taiwan to Midland/Odessa, TX. *See* Exs. W–Y, S (showing 12-hour flight from Taiwan to San Francisco; but 3-leg, 19+ hour flight and 5-hour drive for travel from Taiwan to Midland/Odessa).

[4] Mr. Katz also appears to be TopWire's principal. *See, e.g.*, Exs. F at 1; I.

the bulk of the relevant evidence usually comes from the accused infringer.  Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *Apple I*, 979 F.3d at 1340 (citing *Genentech, Inc.*, 566 F.3d at 1345).  Here, that location is in NDCA—at or near Apple's Cupertino headquarters.

*First*, the overwhelming majority of Apple's sources of proof are in NDCA.  "In determining the ease of access to sources of proof, the Court will look to the location where the allegedly infringing products were researched, designed, developed and tested." *XY, LLC v. Trans Ova Genetics, LC*, 2017 WL 5505340, at *13 (W.D. Tex. Apr. 5, 2017).  Additionally, courts should consider "the location of document custodians and location where documents are created and maintained." *In re Google LLC*, 2021 WL 5292267, at *2 (Fed. Cir. Nov. 15, 2021); *see also LoganTree*, 2022 WL 1491097, at *2 (same).

Although, as this Court has recognized, electronic documents may be accessible nationwide via shared repositories, the sources of proof factor still favors transfer because: (1) the custodians who created and maintain those documents are based in NDCA, and (2) certain documents that belong to relevant custodians—which TopWire will surely request in discovery and not limit itself only to documents stored in shared repositories—are available only in NDCA.

NDCA is the primary location where Apple engineers designed the MLBs for all thirty-four Accused Products.  Gammel Decl. ¶ 6.  Moreover, certain records related to the accused technology—such as Apple's prototypes, documents stored locally on engineers' computers, and hardcopy documents such as notebooks—are physically located in NDCA.  *Id.* ¶ 7.

Similarly, the custodians for Apple's relevant marketing records are all based in NDCA.  DeIuliis Decl. ¶ 4.  In addition to maintaining records in shared locations, those NDCA-based custodians also have records stored locally on their individual computers in NDCA.  *Id.* ¶ 5.

Additionally, nearly all custodians for Apple's records regarding patent licenses and transactions related to the Accused Products are in NDCA—none are in this District. Anderson Decl. ¶¶ 5–6. Those custodians likewise have related records stored locally on their computers. *Id.* ¶ 6. Moreover, for confidential patent licensing and transaction documents, access is only available to those with proper credentials and access rights, and on a need-to-know basis. *Id.* No one in this District is known to have such access. *Id.*

Accordingly, Apple's sources of proof are more readily accessible in NDCA, which favors transfer. *See In re TikTok, Inc.*, 85 F.4th 352, 359 (5th Cir. 2023) (finding factor favoring transfer where electronic evidence "is not equally accessible in either forum") (citation omitted); *XR Commc'ns, LLC v. HP Inc.*, 2022 WL 3448746, at *2–3 (W.D. Tex. Aug. 17, 2022) (finding the sources of proof "factor favors transfer" where "documents relating to marketing, sales, financials, and patent licensing for the Accused Products are kept in the NDCA."); *In re Haptic, Inc.*, 2024 WL 3159288, at *1 (Fed. Cir. June 25, 2024) (finding "sources of proof are more easily accessible from NDCA than WDTX" where "information was restricted on a need-to-know basis to Apple employees located in NDCA and areas outside WDTX"); *Gesture Tech.*, 2022 WL 3592451, at *2–3 ("This factor favors transfer as Apple has identified a specific group of relevant documents and source code that are mostly located in NDCA.").

***Second***, TopWire has not identified any sources of relevant evidence in WDTX—let alone sources that could overcome the weight of the relevant evidence in NDCA. *See generally* Dkt. No. 22. TopWire's only purported connection to WDTX is the office of a registered agent that provides addresses for a fee. Dkt. 22 ¶ 1; *see* Exs. C–E; H.

In attempting to manifest a connection to this District, TopWire's Complaint focuses on the general presence of Apple and alleged third-party suppliers. *See* Dkt. 22 ¶¶ 4–15. But a

"'general presence in [this] district' does not alone 'give th[e] district a special interest in the case.'" *In re Apple Inc.*, No. 2022-128, 2022 WL 1196768, at *3 (Fed. Cir. Apr. 22, 2022), *cert. denied sub nom. CPC Pat. Techs. PTY Ltd. v. Apple Inc.*, 143 S. Ct. 206, 214 L. Ed. 2d 80 (2022). To affect the transfer analysis, sources of proof must be "relevant to the issues in this case." *USTA*, 2023 WL 4833481, at *5. As explained above, Apple's relevant sources of proof are overwhelmingly tied to NDCA. And even Apple's suppliers for the Accused Structures are based outside of this District—as are Apple's points of contact with those suppliers. Pecorario Decl. ¶¶ 5–7.

Accordingly, this factor strongly favors transfer. *See, e.g.*, *Nintendo*, 589 F.3d at 1199–1200 ("Because most evidence resides in [the transferee district] or [elsewhere] with none in Texas . . . this factor [weighs] heavily in favor of transfer."); *LED Wafer Solutions LLC v. Samsung Electronics Co. Ltd. et al.*, 6:21-cv-00292-ADA, Dkt. No. 95 (Aug. 25, 2022) (finding this factor favored transfer where "[i]mportantly, one conclusion remains undisputed: no relevant documents are found in the WDTX").

### 3.    The Compulsory Process Factor Favors Transfer To NDCA.

The most critical third-party discovery will come from Asia, where the named inventor and several companies who developed key prior art to the '202 Patent are located. *See* Ex. J at 1 (showing Dr. Hu's location as Taiwan); Exs. K at 3, Z (relying on prior art from Taiwan-based TSMC, from whom Apple intends to seek discovery concerning product prior art that could not have been raised in IPR). As such, they are located outside of the subpoena power of both NDCA and WDTX, and do not weigh in either direction under this factor. *See, e.g.*, *Topia Tech., Inc. v. Dropbox, Inc.*, No. W-21-cv-01373-ADA, 2023 WL 1978909, at *7 (W.D. Tex. Feb. 13, 2023) ("[The witness] is outside the subpoena power of both the NDCA and the WDTX. Thus, regardless of whether this case remains in this District or is transferred to the NDCA, [that witness] cannot

11

be compelled to testify at trial by the court."); *AlmondNet, Inc. v. Roku, Inc.*, No. 6:21-cv-00876-ADA, 2022 WL 22891201, at *6 (W.D. Tex. Nov. 28, 2022).

But the availability of compulsory process still favors transfer in this case. This factor favors transfer where, as here, the transferee court has subpoena power over more third-party witnesses. *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1337–38 (Fed. Cir. 2009); *Volkswagen II*, 545 F.3d at 316–17. To the extent TopWire contends that Apple's suppliers are relevant, Apple has points of contact with suppliers related to the Accused Products' MLBs in NDCA (and not in WDTX). Pecorario Decl. ¶ 7. Because NDCA has trial subpoena power over those third-party witnesses—whereas WDTX does not—this factor favors transfer.

### 4.   The Practical Problems Factor Is Neutral.

The practical problems factor, under which the Court considers problems based on judicial economy, is neutral. *See Moskowitz Family LLC v. Globus Medical, Inc.*, 2020 WL 4577710, at *5 (W.D. Tex. July 2, 2020). In particular, this case is at a very early stage—discovery has not even opened. Therefore, "any increase in judicial economy from the Court's experience in these early stages of litigation is likely to be limited." *See Parus Holdings Inc. v. LG Elecs. Inc.*, 2020 WL 4905809, at *7 (W.D. Tex. Aug. 20, 2020).

### C.   The Public Interest Factors Favor Transfer Or Are Neutral.

### 1.   The Local Interest Factor Strongly Favors Transfer To NDCA.

"To determine which district has the stronger local interest, th[is] Court looks to where the events forming the basis for infringement occurred." *Dodots Licensing Sols. LLC v. Apple Inc.*, 2023 WL 4980561, at *11–12 (W.D. Tex. Aug. 3, 2023); *Apple I*, 979 F.3d at 1344–45 ("This factor most notably regards not merely the parties' significant connections to each forum writ large, but rather the 'significant connections between a particular venue and the events that gave rise to a suit.'") (citation omitted). NDCA has "significant connections" to the "events that gave

12

rise to [this] suit." *See Apple I*, 979 F.3d at 1345. WDTX does not.

As explained above, the design of the Accused Structures took place almost entirely in NDCA, and completely outside this District. *See supra* Sections II.B, IV.B.1. Likewise, the team responsible for licensing related to the Accused Products is overwhelmingly based in NDCA. *See supra* Sections II.B, IV.B.1. The same is true for the team responsible for marketing the Accused Products. *See supra* Sections II.B, IV.B.1. Under similar circumstances, the Federal Circuit has consistently found that the local-interest factor favors transfer. *See, e.g.*, *Juniper*, 14 F.4th at 1319–20 (because the "events forming the basis for [plaintiff's] infringement claims occurred mainly in the Northern District of California," "the transferee venue [had] a greater localized interest in the dispute"); *In re Apple Inc.*, 2021 WL 5291804, at *5 (Fed. Cir. Nov. 15, 2021) ("[NDCA] had a strong local interest in this matter because the research, development, and operation of the accused technology took place there, [and Defendant] is headquartered there. . . .") (internal citations omitted); *see also Gesture Tech.*, 2022 WL 3592451, at *6. Neither Apple's general presence in Austin, nor alleged suppliers in this District with no relevant information, can "outweigh [Apple's] headquarters in the NDCA," where "the events giving rise to the suit" were overwhelmingly focused. *See Gesture Tech.*, 2022 WL 3592451, at *6; *see Juniper*, 14 F.4th at 1320 (defendant's "general presence in the Western District of Texas is not enough to establish a local interest in that district comparable to that of the Northern District of California").

Because the vast majority of the events giving rise to this suit took place in NDCA, this factor strongly favors transfer.

### 2.    The Remaining Public Interest Factors Are Neutral.

The court congestion factor is "the 'most speculative' of the factors bearing on the transfer decision." *Juniper*, 14 F.4th at 1322 (citation omitted). Because "the Western District of Texas and the Northern District of California show no significant differences in caseload or time-to-trial

13

statistics," this factor is neutral. *LoganTree*, 2022 WL 1491097, at *8 (quoting *Juniper*, 14 F.4th at 1322). Moreover, "[c]ourt congestion will be awarded no weight when there is a non-competing plaintiff in a patent case." *S.M.R Innovations*, 756 F. Supp. 3d at 466. TopWire does not compete against Apple in any market. Accordingly, this factor is neutral.

The two remaining public interest factors—familiarity with governing law and conflicts of laws—are neutral. *See S.M.R Innovations*, 756 F. Supp. 3d at 468 ("There is no reason to believe that the excellent federal courts in NDCA would be unfamiliar with federal law. Additionally, there are no issues involving conflicts of foreign laws. These two factors are neutral.").

## V.    CONCLUSION

Because four of the eight *Volkswagen* factors favor transfer to NDCA, and the remaining three factors are neutral, transfer to NDCA would be clearly more convenient and in the interests of justice. Accordingly, Apple respectfully requests that the Court grant this motion and transfer this case to NDCA under 28 U.S.C. § 1404(a).

### Statement Pursuant to Local Rule CV-7(g)

Counsel for the parties met and conferred in good faith telephonically on March 18, 2026. TopWire was not willing to agree to a transfer of the case to NDCA and no agreement could be reached.

14

Dated: March 24, 2026

By:    /s/ Joze Welsh
       Deron R. Dacus
       State Bar No. 00790553
       **The Dacus Firm, P.C.**
       821 ESE Loop 323, Suite 430
       Tyler, TX 75701
       Phone: (903) 705-1117
       ddacus@dacusfirm.com

       Cosmin Maier (admitted *pro hac vice*)
       Yung-Hoon (Sam) Ha (admitted *pro hac vice*)
       Joze Welsh (admitted *pro hac vice*)
       Asim Zaidi (admitted *pro hac vice*)
       **DESMARAIS LLP**
       230 Park Avenue
       New York, NY 10169
       Tel: 212-351-3400
       Fax: 212-351-3401
       cmaier@desmaraisllp.com
       yha@desmaraisllp.com
       jwelsh@desmaraisllp.com
       azaidi@desmaraisllp.com

       Maria A. Tartakovsky (admitted *pro hac vice*)
       **DESMARAIS LLP**
       101 California Street, Suite 3070
       San Francisco, CA 94111
       Tel: (415) 573-1900
       Fax: (415) 573-1901
       mtartakovsky@desmaraisllp.com

       *Attorneys for Defendant Apple Inc.*

15

**CERTIFICATE OF CONFERENCE**

Pursuant to Local Rules CV-7(G) and as described above, counsel for the parties met and conferred in good faith telephonically on March 18, 2026.  TopWire was not willing to agree to a transfer of the case to NDCA and no agreement could be reached.

*/s/ Joze Welsh*
Joze Welsh

**CERTIFICATE OF SERVICE**

Pursuant to the Federal Rules of Civil Procedure and Local Rule CV-5, I hereby certify that all counsel of record are being served with a copy of the foregoing sealed documents via electronic mail on March 24, 2026.

*/s/ Joze Welsh*
Joze Welsh

16